IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL J. ZUEGE, JR.,

                Plaintiff,              OPINION AND ORDER

v.

                                            09-cv-451-wmc

DANIEL KNOCH and
ROBERT LAZORIK

                Defendants.

---

Plaintiff Michael J. Zuege, Jr., is proceeding on claims that defendants Daniel Knoch's and Robert Lazorik's misdiagnosis and improper treatment for his eyes constituted deliberate indifference to his serious medical need and medical malpractice. Now before the court are the parties' cross motions for summary judgment. Dkt. 54 and 62.

Because no reasonable jury could conclude that defendants were deliberately indifferent to his serous medical need, defendants' motion for summary judgment on those claims will be granted and Zuege's motion for summary judgment will be denied. The court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Zuege's state law medical malpractice claims because the disposition of those claims is not clear from the court record. Specifically, issues of state law remain as to (1) whether Lazorik can be sued for malpractice under state common law, and (2) whether Zuege has adduced sufficient evidence to establish the requisite standard of care with respect to either Lazorik or Knoch. The

parties' motions for summary judgment with respect to those claims will, therefore, be denied, and the claims will be dismissed without prejudice.[1]

## UNDISPUTED FACTS[2]

Plaintiff Michael Zuege is an adult resident of Waupaca, Wisconsin. At all times material to this action, he was in the custody of the Wisconsin Department of Corrections. Defendant Daniel Knoch, a licensed physician, is employed by the University of Wisconsin School of Medicine and Public Health as an assistant professor in the Department of Ophthalmology and Visual Sciences. He has the general duties and responsibilities of a practicing ophthalmologist. Defendant Robert Lazorick is employed by the same department and fits patients with cosmetic and therapeutic contact lenses.

In April 2007, Zuege was seen by Dr. Chan at the Dodge Correctional Institution and had 20/100 vision. On June 26, 2007, Dr. Zhao saw plaintiff at Oakhill Correctional Institution and diagnosed Zuege with Fuchs' Corneal Dystrophy. Zhao noted that a follow up was needed for plaintiff's Fuchs' Corneal Dystrophy. He mentioned Corneal Endothelial Dystrophy twice in his notes. Zhao referred Zuege to the University of Wisconsin Eye Clinic for examination.

---

[1] Zuege also has filed his third motion for the appointment of counsel, dkt. 79, and requests permission to supplement the record with additional evidence, dkt. 81. In light of the rulings above, Zuege's motions for the appointment of counsel and to supplement the record with evidence that Lazorik is not a licensed physician's assistant will be denied as moot.

[2] The following are the material, undisputed facts as presented by the parties when viewed in a light most favorable to Zuege.

Dr. Knoch saw Zuege on November 14, 2007. At that time, Zuege was determined to have a visual acuity without correction of 20/150 in his right eye and 20/400 in his left eye. With his prescription glasses, Zuege had 20/100 vision in his right eye and 20/150 vision in his left eye. Zuege's peripheral vision was slightly decreased in his left eye. The results of his pupillary examination and intraocular pressure and ocular motility tests were within normal limits bilaterally. After examining Zuege, Knoch noted that he had classic findings of keratoconus, including "scissoring of the red reflex and steep left cornea." Keratoconus is a deterioration of the structure of the cornea with gradual bulging from its normal, round shape to a cone shape.

Keratoconus causes decreased visual acuity. The earliest symptom is blurred vision that cannot be corrected with glasses. Rigid contact lenses are the primary treatment for most patients with keratoconus. Severe cases may require corneal transplantation. Knoch diagnosed Zuege with "likely keratoconus, photopsias with a normal exam and a subjective visual field defect."

Zuege was referred to Lazorik for an evaluation and fitting of rigid contact lenses. On November 14, 2007, Lazorik took keratometry measurements. An orbital scan revealed greater keratoconus in Zuege's left eye. At that time, Lazorik fitted Zuege with diagnostic trial rigid contact lenses. Zuege's initial visual acuity with contacts was 20/40 in each eye, but his right eye improved to 20/25 with a slight over-refraction. Lazorik ordered contact lenses, which were mailed to the institution where Zuege was housed.

Zuege saw Lazorik again on December 18, 2007, for a recheck of the contact lenses. Lazorik noted the following in the recommendations section: "Modify edges of contact

lenses. Resume wearing schedule." Lazorik checked the contact lenses and noted that they fit well.

On February 13, 2008, Zuege saw Dr. Knoch and reported that he saw well, but the contacts were uncomfortable and his eyes were drying out. Zuege's corrected visual acuity was 20/60 in his right eye and 20/30 in his left eye and the peripheral vision test showed generalized constriction (tunnel vision). Because a peripheral vision test is very subjective, Knoch prescribed artificial tears four times a day and asked him to return for a repeat vision field test in three to four months.

On May 21, 2008, Zuege returned to Dr. Knoch for follow-up. Zuege reported that he had stopped wearing his lenses because they were painful and that he had not worn them for two months. Zuege was using artificial tears only two to three times a day instead of the prescribed four times a day. Zuege stated that he did not want to wear his contact lenses. Knoch told him that was fine, but recommended intense lubrication of artificial tears six times a day.

A medical resident asked Knoch in front of Zuege whether Zuege had Fuchs' Dystrophy. Knoch responded no, explaining that there were no corneal clefts present. He noted that Zuege likely had endothelial dystrophy.

Dr. Knoch saw Zuege again on July 2, 2008. Zuege's uncorrected visual acuity was stable at 20/200[3] in his right eye and 20/400 in his left eye without contacts. The visual field

---

[3] Because the room in which Knoch examined Zuege did not have a 20/150 line on the eye chart, there was no way to distinguish between visual acuity of 20/150 and visual acuity of 20/200.

test was repeated and showed that Zuege had tunnel vision. Knoch ordered tests to determine the cause of the tunnel vision. He recommended that Zuege try a "piggyback lens," a soft lens worn under the rigid lens.

On July 23, 2008, Zuege had a magnetic resonance imagining scan. On August 6, 2008, Zuege had an electroretinography test and an official tangent screen. That same day, Lazorik saw Zuege, who reported that he never adapted to the rigid contact lenses that were fitted for him in November 2007. Lazorik attempted to fit Zuege with a "piggyback lens," but it did not help Zuege's ability to wear rigid contacts.

On August 20, 2008, plaintiff saw Dr. Knoch and stated that he could not wear his contact lenses for more than a few hours. Knoch advised him that the results of his magnetic resonance imaging scan, electroretinography test and official tangent screen were all normal. His visual acuity was 20/200 in his right eye and 20/400 in his left eye.

In a January 20, 2009 office note, Dr. Donna A. Higgins, O. D., wrote that Zuege "was getting a solid 20/30 and fair 20/25 with trials and OR. Unaided is 20/400." An undated note from Dr. Higgins states "Left cornea mangled from cl." She also noted that "L. Cornea may be warped from tight cl." In a March 23, 2009 letter to Dr. Burton Cox at the Prairie du Chien Correctional Institution, Dr. Higgins stated that Zuege had both keratoconus and Fuchs' Endolethial Dystrophy. She stated that surgery was not advisable and that the best option was to manage both conditions. In the letter, Higgins stated that his contact lens' fit was not good and it was not possible for Zuege to wear the lenses for any length of time.

There is no treatment that delays the progression of Fuchs'. Although topical medication similar to salt water sometimes improves sight, it usually makes wearing contacts more uncomfortable and does not change the progression of the disease.

OPINION

Plaintiff bases his Eighth Amendment deliberate indifference and state law medical malpractice claims on allegations that defendants provided him with contact lenses that caused him eye pain and permanent vision and cornea damage, ignored his repeated complaints of pain and loss of vision and failed to diagnose him with Fuchs', a medical condition that should have been obvious given his symptoms and test results. Defendants have moved for summary judgment on all of plaintiff's claims. Plaintiff limits his motion for summary judgment to his deliberate indifference claims, asserting that he has "established . . . deliberate indifference . . . in two separate areas": (1) Knoch should have known from the results of the February 13, 2008 threshold test that there was a problem with his contacts and (2) both Lazorik and Knoch ignored his repeated complaints of pain and continued to prescribe "blatantly inappropriate treatment" that aggravated his condition. Dkt. 53 at 6-7.

I. Eighth Amendment Claims

To survive summary judgment on his Eighth Amendment claims, Zuege must come forward with sufficient facts for a reasonable jury to find that defendants' treatment of his eye condition constituted "deliberate indifference" to plaintiff's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Zuege seems to suggest that defendants should

6

be held to a different or higher standard of care, because they treated him in a hospital and not a prison. Dkt. 54 at 5. Because the Eighth Amendment prohibits cruel and unusual punishment of inmates by state actors, however, it does not matter where Zuege was treated or whether defendants are prison employees. As state employees, defendants are subject to the same standard of care as prison officials.

A serious medical need may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it (1) "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998), (2) causes pain, *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996), or (3) otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For purposes of summary judgment, defendants do not dispute that Zuege's eye problems rise to the level of a serious medical need.

But, plaintiff must also show that defendants' treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [his] condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted). In other words, defendants' treatment must be so far afield of accepted professional standards as to imply that it was not actually based on a medical judgment. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996). "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Under these standards, the deliberate indifference prong of plaintiff's claim has three elements:

1. Did plaintiff need medical treatment?

2. Did defendants know that plaintiff needed treatment?

3. Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff has the burden to prove his case at trial, it is his burden on summary judgment to come forward with enough evidence on each of these elements to show that a reasonable jury could find in his favor. *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The undisputed facts show that Zuege needed medical treatment for his eye condition and that the defendants knew that he needed the treatment. For purposes of determining deliberate indifference, the principal issue in this case is, therefore, whether Zuege has come forward with sufficient evidence from which a reasonable jury could conclude that defendants failed to take reasonable measures to provide him with necessary treatment.

Although plaintiff generally asserts that defendants failed to treat his eye condition, it is undisputed that Dr. Knoch saw plaintiff on November 14, 2007, February 13, 2008, May 21, 2008, July 2, 2008 and August 20, 2008. During those visits, Knoch performed numerous diagnostic tests, prescribed contact lenses to be fitted by Lazorik and attempted to reduce Zuege's resulting discomfort from the lenses by suggesting intensive use of artificial tears and piggyback lenses.

Even so, Zuege asserts that Knoch should never have prescribed contact lenses because he should have diagnosed him with Fuchs' Corneal Dystrophy. In support, plaintiff points out that the prison physician previously had diagnosed him with the disease, a medical resident questioned whether Zuege had the disease and Dr. Higgins stated that he had the disease. A reasonable jury could not, however, conclude from those facts alone that Knoch's diagnosis and treatment decisions constituted a substantial departure from accepted professional judgment, practice or standards.

Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996); *Snipes*, 95 F.3d at 590-91. Thus, neither an incorrect diagnosis nor improper treatment resulting from negligence states an Eighth Amendment claim without more. *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).

As defendants point out, Lazorik's role was to fit Zuege with contact lenses. As such, he was not in a position to diagnose or otherwise treat Zuege's eye conditions. Although plaintiff asserts that Lazorik improperly fit him with the lenses and was well aware that they were hurting his eyes, there is no evidence that Lazorik substantially departed from accepted professional judgment or practice in working with Zuege. On the contrary, Lazorik attempted to fit Zuege with comfortable contact lenses. He listened to Zuege's concerns about the contact lenses and attempted to correct the problems that Zuege was experiencing, albeit unsuccessfully. Even if Lazorik's actions rose to the level of negligence, there is no evidence that he was deliberately indifferent to Zuege's eye condition, nor that a Fuchs' diagnosis

would have required a certain type of treatment that he did not receive. In fact, it is undisputed that there is no treatment that delays the progression of Fuchs'.

Because no reasonable jury could find that either Knoch or Lazorik acted with deliberate indifference to Zuege's serious medical needs, I will grant defendants' motion for summary judgment on the federal claims.

## II.  State Law Medical Malpractice Claims

Because defendants' motion for summary judgment as to Zuege's federal claim will be granted, the court must consider whether it would be proper to allow him to proceed on his state law claims. The only ground for jurisdiction would be supplemental jurisdiction under 28 U.S.C. § 1367. Under § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims once federal claims have been dismissed. "[T]he general rule is that, when all federal-law claims are dismissed before trial, the [supplemental] claims should be left to the state courts." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). If judicial economy, convenience, fairness and comity warrant retaining supplemental jurisdiction, a district court may nevertheless do so. *Hansen v. Board of Trustees*, 551 F.3d 599, 607 (7th Cir. 2008). For example, a court may retain jurisdiction when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347-48 (7th Cir. 1986). Also, the court may retain jurisdiction if the disposition of the state law claim is clear. *Khan v. State Oil Co.*, 93 F.3d 1358, 1366

(7th Cir. 1996) (if correct disposition of supplemental claims is clear, considerations of economy favor retaining jurisdiction).

### A.  Lazorik

Defendants contend that Lazorik cannot be sued for medical malpractice because he is not subject to Wisconsin Statutes Chapter 655, which provides the exclusive procedure and remedy for medical malpractice claims in Wisconsin.  *See* Wis. Stat. § 655.007 (patients with malpractice claims subject to chapter 655).  Defendants are correct to a point.  Chapter 655 is the only remedy available for bringing a medical malpractice claim against a "health care provider" in Wisconsin.  *Patients Comp. Fund v. Lutheran Hospital-LaCrosse, Inc.*, 216 Wis. 2d 49, 55, 573 N.W.2d 572, 575 (Wis. App. 1997).  Section 655.002 limits "health care provider" to physicians, nurse anesthetists, hospitals and other corporations or organizations organized for the primary purpose of providing medical services of physicians or nurse anesthetists.  *Strong v. Wisconsin*, 544 F. Supp. 2d 748, 763-64 (W.D. Wis. 2008); *Patients Comp. Fund*, 216 Wis. 2d at 55.   The undisputed facts show that Lazorik is not a "health care provider" within the meaning of Chapter 655 because he is not a physician or nurse anesthetist.

Defendants do not raise the issue, but Lazorik may also be exempt from suit under Chapter 655, assuming as an employee of the University of Wisconsin, he is considered a "state employee" within the meaning of the statute.  § 655.003(1); *Wis. Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 10 n.2, __ Wis. 2d __, 787 N.W.2d 22; *Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 50, 302 Wis. 2d 358, 735 N.W.2d 30 (Abrahamson, C.J. dissenting);

11

*Suchomel v. Univ. of Wis. Hosp. & Clinics*, 2005 WI App 234, ¶¶ 26-28, 288 Wis. 2d 188, 708 N.W.2d 13.  Therefore, defendants are correct that Lazorik is not subject to liability under Chapter 655.

This does not necessarily dispose of plaintiff's malpractice claim against Lazorik, as defendants appear to suggest in stating flatly that Chapter 655 is the exclusive remedy for all medical malpractice claims in Wisconsin.  Presumably, there is an independent basis for plaintiff's negligence claim against Lazorik under Wisconsin common law.  This court is not in a position, however, to decide whether Lazorik can be held liable in this case because the parties have not adequately addressed this issue.

Moreover, plaintiff has offered evidence of negligence with respect to Lazorik.  Plaintiff submitted notes and a letter from Dr. Higgins, who wrote that Zuege's left cornea was "mangled" by an ill-fitting contact.  As Zuege's treating physician, Dr. Higgins might be able to testify to the degree of care and skill that an average physician's assistant must use in fitting a contact lens.  Although Lazorik asserts that his treatment of Zuege was done within the community health care standards, Zuege's submission of Higgins's treatment notes arguably put this material fact in dispute.  Dr. Higgins's notes and letter also constitute evidence that Zuege may have suffered some injury as a result of the allegedly improper fitting of his contact lenses.

Given these open legal and factual issues involving only state law, the court declines to exercise supplemental jurisdiction and will dismiss the state law claim against Lazorik without prejudice.

### B.  Dr. Knoch

For similar reasons, the court will decline to exercise supplemental jurisdiction over the state law claim against Dr. Knoch and will dismiss the claim without prejudice.  Zuege claims that Knoch committed medical malpractice in failing to diagnose him with Fuchs', ignoring his complaints of pain from poor-fitting contact lenses and sending him to Lazorick, who was not a licensed physician, to fit his contact lenses.

Like Lazorik, Dr. Knoch appears exempt from suit under Chapter 655 as a state employee.  Without stating so directly, the parties appear to agree that the basis for plaintiff's claim against Knoch is common law negligence.  Like all claims for negligence, a claim for medical malpractice includes the following four elements:  (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff.  *Paul v. Skemp*, 2001 WI 42 ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860.  Wisconsin law more specifically defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances."  *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); *Shuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988).

Thus, plaintiff must show that Dr. Knoch failed to use the required degree of skill exercised by an average medical provider, he suffered harm and there is a causal connection between the Knoch's failures and plaintiff's harm.  Wis J-I Civil 1023.  Unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of care.  *Gil v. Reed,* 535 F.3d 551, 557-58 (7th Cir. 2008) (plaintiff may show that an ordinary person could conclude from

13

common experience that his injury would not have occurred had medical providers exercised reasonable care); *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118, ¶ 35, 284 Wis. 2d 56, 699 N.W.2d 524.

Defendants point out that plaintiff has submitted no expert testimony. However, Dr. Higgins's statements concerning the ill-fitting contacts arguably offer support for plaintiff's claim. As a physician, Dr. Higgins might be able to testify to the degree of care and skill that an average physician should have exercised when presented with Zuege's repeated complaints of pain and discomfort with the contact lenses. As with Lazorik, Higgins's treatment notes put this material fact in dispute and provide some evidence of Zuege's alleged injury. In sum, because the disposition of the state law claim against Knoch is not clear, the court declines to exercise supplemental jurisdiction and will dismiss the claim without prejudice.

### III. Remaining Motions

After the briefing was completed on the parties' cross motions for summary judgment, plaintiff filed a third motion for appointment of counsel and a motion to supplement the record with evidence that Lazorik is not a licensed physician's assistant. Because plaintiff's federal claims have been dismissed and supplemental jurisdiction will not be exercised over the state law claims, both motions will be denied as moot.

ORDER

IT IS ORDERED that:

1. Plaintiff Zuege's motion for summary judgment, dkt. 54, is DENIED.

2. Defendants' motion for summary judgment on plaintiff's claims that defendants were deliberately indifferent to his serious medical need is GRANTED.

3. Given that no federal claim remains, the court declines to exercise supplemental jurisdiction over plaintiff's claim that defendants committed medical malpractice. Defendants' motion for summary judgment on the state law claims is, therefore, DENIED and the claims are DISMISSED without prejudice.

4. Plaintiff's motion for appointment of counsel, dkt. 79, and motion to supplement the record, dkt. 81, are DENIED as moot.

Entered this 29th day of September, 2010.

                                              BY THE COURT:

                                              /s/

                                              _____
                                              WILLIAM M. CONLEY
                                              District Judge